We move to the fifth case, United States v. Hernandez. Good morning, Your Honors. May it please the Court, my name is Colleen Rame, and I'm with the Federal Public Defender's Office here on behalf of Jose Hernandez, the defendant appellant in this case. In this case, we have raised two challenges to Mr. Hernandez's sentence. The second issue has been briefed in a number of cases before this Court, currently pending, so I would like to focus on the first issue primarily in my remarks, unless this Court has questions for me about the CARES Act. With respect to the sentencing guidelines and the District Court's calculation in this case, what we've seen here is that the Court has taken fairly similar facts for two defendants in the same case and applied the sentencing guidelines differently. In Eduardo Hernandez, so the defendant in this case is Jose Hernandez, and I apologize because the names start to get a little bit confusing in this case, but a co-defendant, Eduardo Hernandez, the government also asked for a base offense level of three. Did he rank at the same level in the gang as Jose Hernandez? No, Your Honor. So while I certainly, and Mr. Hernandez does not argue that they are completely equal in terms of, there are multiple factors that a court needs to consider when determining sentencing. And of course, Mr. Hernandez, Jose Hernandez has gotten leadership enhancement in this role. The reason I ask is, the District Court, I don't think necessarily has to be totally consistent in the way the District Court ranks defendants in a criminal conspiracy. Maybe the District Court just decided to give Eduardo Hernandez a break. Well, that wasn't the way that the District Court explained that, Your Honor. So, I mean, whether, that is a perfectly reasonable thing for the Court to do, but it should not affect the way the sentencing guidelines are determined. So, in Eduardo's case, you know, we have the facts that he was a member of the gang, he shot at a rival gang member, you know, they found that he engaged in unlawful use of a weapon. He knew that the gang engaged in all of this violent activity. And the Court said, you know, this seems that the appropriate base offense level cross-reference for the RICO conspiracy is attempted murder. Can I ask you a broad question? Sure. Why should we care about that or look at that at all? Because I think the government's response to an argument like that would be that the District Court made a mistake in sentencing another defendant. Why shouldn't we just look at the conduct, just, you know, cabin our review as to the, look at the conduct of Mr. Jose Hernandez, decide whether the guideline applies. And then perhaps you can make a 30-553 argument, a discrepancy argument. The judge has sent, you know, the judge doesn't treat equal gang members or equal participants in the gang the same, and therefore you have a 30-553 argument. But when we start looking at the application of particular guideline factors or guideline enhancements, why shouldn't we just review the conduct of the client or the defendant in front of us and determine up or down. The district judge either made an error in applying it or not, despite these other factors that might exist. Well, the reason I highlighted this is because it's our position that the District Court got it right in Eduardo's case. Eduardo's case and Jose's case are similar in terms of the facts, you know, for or against whether or not they actually participated in a conspiracy to commit murder. And they are also consistent with other case law. In other cases we've seen, both from this court and around the country, this enhancement and this guideline being applied where there is actual evidence in the record of actual conspiracy that was participated in by the defendant. In this case, and in Jose's case, the court noted that he had pulled a gun on police officers at some point, thinking that they were rival gang members. Now, the PSR states in that offense that the police officers were responding to an incident where there was an altercation going on between two cars. The police officers pulled up next to Mr. Hernandez's car, and he pulled out the gun, thinking that they were the rival gang members. Now, there's nothing about that that indicates some sort of premeditation, that indicates that this was part of a broader conspiracy. From that information we have that there was an altercation happening. We don't know anything particular about that. The other information that has been presented by the government was some information based on Mr. Vasquez's grand jury testimony, that there were two particularized hits that were put out on specific people. What is telling about those instances is Mr. Vasquez, when he was part of the Latin Kings, a different defendant, Mr. Janel, was the Inca at the time. He references Mr. Janel giving those orders, all of those things. Mr. Hernandez wasn't actually cited in that testimony as being involved in that decision, or involved in that discussion. Would he still have been gang leadership, even if he wasn't the Inca? It's unclear. There was some, I'm forgetting the name, he was part of the nation, it sounded like, according to Mr. Vasquez. Part of the problem is the government didn't argue those things in the district court, so it wasn't fleshed out. We don't actually know what role the nation may have played in such a thing, but my generalized understanding of this is that even if he was part of the nation, that's sort of separate from what's going on in the localized group. So it's not at all clear that he would have known that this was happening or been involved in the conversation, the particular conversation at that time. Other than that, we have the allegation that he served as Inca for some period of time, that the Latin kings are engaged in murders and violence. We do have particularized allegations that he was involved in a punishment and a beating of another gang member, which certainly supports a cross-reference to aggravated battery, conspiracy to commit aggravated battery, something of that nature. Even in the district court, Mr. Hernandez admitted that there was evidence that would tie him and support a cross-reference to attempted murder. So the argument isn't that he was just completely innocent of all wrongdoing. The question is the guidelines place a particular premium on specific conspiracy to commit murder. We're looking at a difference of a base offense level of 27 versus 33. And that is a significant jump under the guidelines, which we would ask that this court rule in step with sort of the implication of prior case law that there should be more than generic arguments that this person had, even a leadership role or anything else, when the gang was going around and committing violence in order to apply such a significant enhancement. And I'll reserve the remainder of my time. Thank you. Thank you, counsel. Mr. Fullerton. Good morning. May it please the court. The district court did not commit clear error in assigning the murder or conspiracy to commit murder enhancement to Mr. Jose Hernandez. Mr. Hernandez pleaded guilty to a RICO conspiracy whose activities in his plea declaration included, he admitted, included, I think, arson, extortion and acts of violence. The district court, therefore, at sentencing was called upon to determine whether that conspiracy that he admitted to participating in with the Latin King Street gang involved conspiracy to commit murder. Was it conspiracy to commit murder, something that furthered the conspiracy that Hernandez had agreed to? And was it foreseeable to him? And the answer to both questions is yes. But that was very clear from the evidence supplied by the government in advance of sentencing. The government gave the district court a very extensive government's version of the offense that laid out Mr. Hernandez's role in the gang, the structure of the gang, the rules of the gang, the purpose of the gang. And all of that made clear that the Latin Kings gang protected its territory with violence, including shooting at people, trying to kill people, assigning hits on people, sending individual gang members out to murder specific people. Luis Vasquez, one of the co-defendants in this case, pleaded guilty to being assigned to commit a murder of a particular former Latin King member. Mr. Hernandez was a member of this particular chapter of the Latin Kings for almost 30 years. Very different from Eduardo Hernandez, who had been a member of the Latin Kings gang for some six years at the time of this sentencing. Jose Hernandez, this defendant, had occupied the position of Inca, or head of the local chapter of the Baywood Latin Kings, during two periods of time. He was Inca first, and then he became the chairman of the Crown Council, a higher body of Latin King members that oversaw the local chapters of the Latin Kings. And then after his term as chairman of the Crown Council expired, Mr. Hernandez resumed the position as Inca of this Latin King gang. Do we know what his position was when the ordering, the shooting of Smurf and Hugo occurred? I think from what I recall, Janelle was the Inca at that time. That would have meant that Hernandez was the chairman of the Crown Council at that time. So Hernandez, as chairman of the Crown Council, supervising the Inca, not only this Inca, but other Incas as well, would have known of, would have been reasonably foreseeable to him, that the local chapter was putting out hits on people, former gang members, opposition gang members, and so on. Mr. Hernandez also had personal involvement with activities that would suggest, certainly would not make it clearly erroneous to conclude, that murder, conspiracy to commit murder, was in furtherance of the gang and foreseeable to him. He supplied an AR-15 to the gang, the Maywood Chapter, when they were having troubles with rival gang members. Mr. Hernandez admitted on tape having participated in shootings at gangster disciple members. He also, as counsel alluded to, had pulled a gun on some police officers that he thought were rival gang members. Now, the district court did not leap from that incident with the police officers to just conclude that, well, he must have conspired to commit murder with these other Latin kings. No, the district court thought that was evidence of Mr. Hernandez' readiness to commit murder, his agreement with others to commit acts of violence, including murder, and thought it probative of his involvement with this larger conspiracy. So, the signing of the guideline enhancement to Jose Hernandez was not clearly erroneous. As for the Eduardo Hernandez situation, you know, the government sought the conspiracy to commit murder enhancement for Eduardo Hernandez. The district court disagreed. I would argue that the district court erred in that case rather than in this case. So, for all these reasons, we'd ask you to affirm the sentence of Jose Hernandez. Thank you. Thank you, counsel. Ms. Ramos? Thank you, Your Honors. I just want to point out that I think that one thing that is really telling in this case is the wealth of information we have and the government's failure to be able to actually tie Mr. Hernandez to a particularized event that can be reasonably characterized as a conspiracy to commit murder. They had several informants who testified before the grand jury. There was a lot of, I mean, certainly Mr. Hernandez is no saint. There is a lot that he was involved in and, you know, that there was evidence to support it. The only thing we're asking for here is that the court, I believe if we adopt the government's position, anyone who is involved in the Latin Kings or any similar gang where sometimes murders do happen and are condoned by the organization would automatically jump up to, properly under the guidelines, to a 33 regardless because, you know, we just don't have evidence here that he was actually involved in any sort of conspiracy or condoned it or anything like that. And for that reason, we would ask the court to send this back for resentencing based on a base offense level of 27 or at least reconsideration. Thank you. Thank you very much, counsel. Thanks to both counsel. The case is taken under advisement.